**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**JAUVEIERRE WILSON** **PLAINTIFF**

**VS.** **CIVIL ACTION NO. 4:25-CV-05-MPM-DAS**

**MARCUS MCCLURE, et al.** **DEFENDANTS**

**ORDER**

This cause comes before the court on the motions of defendants Marcus B. McClure, Jonathan Matthew Reynolds and Sequcia Wren to dismiss the claims against them, pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff Jauveierre Wilson has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, is prepared to rule.

This is a § 1983 action arising out of allegations that, while living with his mother on the grounds of the Mississippi State Penitentiary at Parchman (MSP), following a warrantless search of his home, plaintiff was unlawfully arrested and then jailed for eight days based on charges which were never made clear to him but which, it seems likely, involved defendants' false allegations that he was a parolee in possession of a firearm. In his amended complaint, plaintiff explains his living arrangement at MSP by noting that his mother worked as a correctional officer there. [Complaint at 3]. In describing how the events of this case came about, plaintiff alleges that certain "bad blood" developed between himself, his mother and defendants, which led them to deliberately violate his constitutional rights. Specifically, plaintiff alleges that:

> 11. Before the incident giving rise to this lawsuit, Plaintiff resided on the grounds of MSP with his mother, who worked there as a correctional officer. In January 2023, during the weeks leading up to Plaintiff's arrest, complaints among certain members of MDOC staff, including from Defendant Wren, had been made known to Plaintiff's mother

> regarding her sons' use of an employee gym, despite repeated assurances from a leasing agent that gym access be allowed to them.
> 12. On or about January 16, 2023—the day of the incident which is made the basis of this lawsuit—a dispute erupted between Plaintiff and MDOC inmates on horseback and/or the MDOC employees accompanying them, after Plaintiff warned the inmates about the potential for the dogs to become excited, and potentially aggressive, should the inmates ride too close to the house.
> 13. On information and belief, and further to any tensions existing between Plaintiff's family and other MSP staff in connection with the above controversies, there may have been additional motivations for Defendants' targeting of Plaintiff, including a vindictive desire to retaliate against Plaintiff's mother over her refusal to 'look the other way' or countenance casual misconduct she witnessed as a supervisor assigned to MSP's kitchen and dining facilities.

[Amended complaint at 3-4].

Plaintiff alleges that, in searching his residence, defendants needlessly broke down his door and "ransacked" his apartment and that they refused to provide a copy of a search warrant or even offer a verbal explanation as to why they were searching his home:

> 14. On or about the afternoon of January 16, 2023, following the encounter which had previously taken place between the inmates on horseback and Plaintiff's dogs, Defendants arrived unannounced and without explanation at Plaintiff's residence. Defendant Sequcia Wren oversaw the deployment of the K-9 unit during the raid and specifically instructed Defendant Marquis Hall and another correctional officer to forcibly break down the front door of the residence.
> Defendants then forced their way inside and, under Defendant Wren's supervision, conducted a canine-assisted search of the subject property, proceeding to toss and ransack the premises.
> 15. During the search, Defendants Marcus B. McClure and Jonathan Matthew Reynolds personally ransacked the residence. Throughout this process, Plaintiff and his family member were verbally assaulted, harangued, and intimidated by both Defendants McClure and Reynolds. Plaintiff and his family member repeatedly asked Defendants McClure and Reynolds why the residence was being searched, but both Defendants refused to provide any explanation, justification, warrant, or lawful basis for the search.
> 16. Before Defendants McClure and Reynolds entered Plaintiff's bedroom, Plaintiff expressly warned them that his family dogs were inside the room. Plaintiff requested an opportunity to secure the dogs to prevent harm to either the animals or the officers. In response, Defendant Marcus B. McClure stated words to the effect of: "If one of your dogs bites us, we will kill them." Only after Plaintiff pleaded further did Defendants permit him to kennel the dogs before continuing the search.

[Amended complaint at 4-5].

Plaintiff contends that, during their search, defendants found a pretext to arrest him, based on the presence of a gun in a "fanny pack" which, he asserts, defendants knew belonged to a family member and not to him. Specifically, plaintiff alleges that:

> 17. During the search, Defendants McClure and Reynolds located a fanny pack containing a firearm, a driver's license, and a birth certificate belonging to Plaintiff's family member. Despite knowing the firearm did not belong to Plaintiff, Defendants stated that they were going to attribute ownership of the firearm to Plaintiff because, as a parolee, that would constitute "automatic jail time."

[Amended complaint at 5]. Plaintiff further alleges that, after having wrongly arrested him, defendants' false allegations resulted in him being held in solitary confinement at the Sunflower County jail for eight days with no clear information regarding why he was being held. Moreover, plaintiff alleges that he was not provided with any form of hearing or even presentment before a magistrate before he was ultimately released based upon a notation which was as vague and unclear as the one which had noted his original incarceration. Specifically, plaintiff alleges that:

> 18. Defendants then separated Plaintiff from his family member, placed Plaintiff in handcuffs, and transported him for booking at the Sunflower County jail. Plaintiff was arrested despite the absence of probable cause, a warrant, or any lawful justification.
> 19. Defendants' actions were undertaken without authority, reason, or charge, in violation of Plaintiff's constitutional rights of due process and freedom from unreasonable incursion upon his personal privacy and bodily autonomy.
> 20. Plaintiff was booked into Sunflower County jail by Kendria Lanney at around 19:00 hours on January 16, 2023, with his arrest time being listed at 15:00 hours. The charge reads "Hold for Other Agency – Warrant," though Plaintiff's parole officer confirmed repeatedly to Plaintiff's mother that no such hold existed. Plaintiff was restricted to solitary confinement without a parole revocation hearing, presentment, or other hearing of any kind, before he was finally released from custody. Plaintiff's records show he was released January 24 at 10:08 hours by Sean Murphey for the reason of "other discharge" with an added comment of "failure initial appearance."

*Id*. at 5.

Feeling aggrieved, plaintiff filed the instant § 1983 action seeking recovery for alleged constitutional violations arising out of his arrest and detention, and, in doing so, he has sought

recovery against various MDOC employees who, he alleges, caused that arrest to occur. These employees include MSP Superintendent Marcus B. McClure, MSP Warden Jonathan Matthew Reynolds and MSP Deputy Warden Sequcia Wren. These defendants have each filed Rule 12 qualified immunity motions, arguing that they should be dismissed from this case based upon the insufficiency of the allegations against them in the amended complaint.

The doctrine of qualified immunity shields a governmental official from civil liability for damages based upon the performance of discretionary functions if the official's acts did not violate clearly established constitutional or statutory law of which a reasonable person would have known. *Easter v. Powell*, 467 F.3d 459, 462 (5th Cir. 2006). The court follows a two-pronged analysis to determine whether a defendant is entitled to qualified immunity, inquiring (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right and, (2) whether the constitutional right was clearly established at the time the conduct occurred. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

In addressing the qualified immunity issues in this case, this court notes at the outset that there are two separate issues in this context. The first issue is whether defendants will be held entitled to qualified immunity in the context of a motion for summary judgment after discovery has been conducted and after this court has satisfied itself that, to the extent practicable, it understands what transpired in this case. The second, and more immediate, issue is whether this court should decide *now* at the Rule 12 dismissal stage, that defendants are entitled to qualified immunity, even though, as things stand now, it has a large number of important questions regarding what happened in this case. In considering these issues, this court recognizes that, under the Fifth Circuit's decision in *Carswell v. Camp*, 54 F.4th 307, 311–12 (5th Cir. 2022), the

plaintiff must first survive a Rule 12 motion to dismiss without discovery, and this court cannot defer deciding whether the existing pleadings overcome qualified immunity until after such discovery. This court further recognizes that, if it does find discovery to be necessary under Fifth Circuit precedent, *see, e.g. Lion Boulos v. Wilson,* 834 F.2d 504 (5th Cir. 1987), then it must generally limit that discovery to qualified immunity-related issues. *See Asante-Chioke v. Dowdle*, 103 F.4th 1126, 1131 (5th Cir. 2024).[1]

For the reasons discussed below, this court concludes that the allegations of plaintiff's amended complaint plausibly allege that defendants violated clearly established law relating to his 1) false arrest and 2) wrongful imprisonment claims based upon the standards applicable to Rule 12 motions and the Fifth Circuit's decision in *Carswell*.[2] This court will accordingly deny defendants' Rule 12(b)(6) motion to dismiss these claims, based solely upon the allegations of the complaint and without regard to any discovery issues. At the same time, this court notes that it may yet grant defendants' qualified immunity motion at the summary judgment stage, depending upon what qualified immunity-related discovery in this case reveals.

In so stating, this court emphasizes that there are many cases in which a plaintiff's allegations of wrongdoing against officers wilt under the harsh light of discovery. In this vein, waiting until after discovery to issue a final ruling upon qualified immunity issues is, very often, neither a pro-plaintiff nor pro-defendant approach, it is a pro-*justice* approach. Moreover, while

---

[1] This court notes that, after suggesting in its initial opinion in *Carswell* that *Lion Boulus* had been overruled, the Fifth Circuit made it clear in its revised opinion in *Carswell* (and subsequently in *Asante-Chioke*) that, while rather sharply curtailed by *Carswell*, qualified immunity-related discovery under *Lion Boulus* remains a valid part of Fifth Circuit law, in appropriate (and limited) cases.

[2] This court notes that, in his amended complaint, plaintiff groups his wrongful imprisonment claims under the heading of his false arrest claim, but he clearly alleges that his unlawful jailing caused most of his damages in this case.

this court recognizes that the plaintiff in this case makes a number of very serious allegations against defendants in his amended complaint, it is by no means wedded to the notion that these allegations will prove to have factual merit. To be sure, this court is legally required to *assume* at this juncture that they do have merit, but it recognizes that the filing of a complaint is merely the *start* of the litigation process, and it is not uncommon that what seems to be a strong case at the pleading stage proves to be a very weak one after discovery.

While this court believes that there are a number of unsettled factual issues in this case, it recognizes that defendants are entirely within their rights under *Carswell* in seeking dismissal now, at the Rule 12 stage. At the same time, this court emphasizes that, having chosen to raise these issues at the Rule 12 stage instead of on summary judgment, defendants must play by the rules **applicable to Rule 12 motions.** In this vein, the Fifth Circuit has observed that a motion to dismiss under rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982). Further, the complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986).

In this vein, this court has repeatedly seen how, post-*Carswell*, many defendants have sought to, in effect, have their cake and eat it too, by improperly applying summary judgment standards to Rule 12 motions. For example, this court has seen how many defendants seeking Rule 12 dismissal, including the defendants in this case, ignore the fact that plaintiffs are not expected, at the Rule 12 stage, to allege facts in their complaint which are in the possession of defendants and which are unknowable to them without discovery.

Crucially, the Fifth Circuit has recognized that, "when discoverable information is in the control and possession of a defendant, it is not necessarily the plaintiff's responsibility to provide

that information in her complaint." *Innova Hospital San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.,* 892 F.3d 719, 730 (5th Cir. 2018). In so writing, the Fifth Circuit approvingly cited the Eighth Circuit's observation that "while a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit, we must also take account of [his or her] limited access to crucial information." *Innova Hospital,* 892 F.3d at 730, *citing Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 595 (8th Cir. 2009).

*Innova Hospital* is, in this court's view, an extremely important part of the Fifth Circuit's jurisprudence, since, if it is not applied, it becomes, in many cases, a trivial matter for officers to violate the rights of citizens. Indeed, it strikes this court that an officer who wished to have a personal enemy arrested based on false charges and detained without due process could, barring *Innova Hospital*'s holding, do so by following a rather basic playbook. Specifically, such an officer would only need to take basic precautions to ensure that his actions in causing this to happen remained hidden from the suspect (a trivial matter when he is in a jail cell), and, when suit is filed, seek Rule 12 dismissal under *Carswell* based on the fact that the complaint does not specifically allege what he did wrong.

There is nothing about the nature of qualified immunity motions which renders *Innova Hospital* or other limitations upon Rule 12 dismissals inapplicable to them. To the contrary, the Fifth Circuit has recognized that, in qualified immunity cases, constitutional claims may turn upon "facts peculiarly within the knowledge of the defendants." *Schultea v. Wood*, 47 F.3d 1427, 1432 (5th Cir. 1995) (en banc). Moreover, the U.S. Supreme Court has made it clear that "[o]ur qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant, even when, as here, a court decides only the clearly-established prong of the

standard." *Tolan v. Cotton*, 572 U.S. 650, 657, 134 S. Ct. 1861, 1866 (2014). While the qualified immunity issues in *Tolan* were raised on summary judgment, this court believes that its admonition has even greater force in the Rule 12 dismissal context, since, in that context, plaintiffs have not even been given a chance to avail themselves of the discovery process.

Another important limitation upon Rule 12 motions to dismiss lies in the fact that, even as late as the trial stage, FRCP Rule 15 provides for the liberal amendment of pleadings. Implicit in this fact is the principle that a plaintiff is not required to draft a perfect complaint the first time and that the overriding purpose of a civil lawsuit is to reach a result consistent with the interests of justice, and not for the court to, in effect, serve in the role of a law school professor "grading" the work of the plaintiff's counsel and expecting perfect work. Having said that, this court fully recognizes that, particularly in the qualified immunity context, plaintiffs are not entitled to use a civil complaint as the basis for a "fishing expedition" in which they seek to use discovery to find out whether they have a potential claim. At the same time, in cases where the complaint plausibly alleges that the defendant committed acts of misconduct which violated clearly established federal law, then the fact that every claim is not phrased perfectly is no basis to dismiss claims which are otherwise plausible.

These are not new principles which this court is urging to be adopted. To the contrary, they constitute well-settled law in this circuit which must simply be applied. This court notes that failing to apply *Innova Hospital*'s holding is not the only context in which, in its experience, defendants have sought to ignore other important limitations on rule 12 motions post-*Carswell*. For example, this court has seen how some defendants seek, contrary to Fifth Circuit precedent, to have it consider their own selection of helpful exhibits and proof which they attach to their motion to dismiss, even though Fifth Circuit precedent makes it clear that this is only permissible

when such proof or exhibits are "referred to in the plaintiff's complaint and are central to [his] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). In this court's experience, this holding has not prevented some defendants from seeking to obtain Rule 12 dismissal post-*Carswell* based upon their own selective offering of proof attached to their motions to dismiss, without giving the plaintiff a chance to develop his own proof in discovery. *See, e.g. Parttridge v. Panola Cnty., Mississippi*, 2026 WL 512142, at *4 (N.D. Miss. Feb. 24, 2026); *Jones v. Tate Cnty., Mississippi*, 2025 WL 1981211, at *3 (N.D. Miss. July 16, 2025). The unfairness of such a process should be obvious.

Having made these general observations regarding Rule 12 motions post-*Carswell*, this court now turns to a discussion of defendants' motion to dismiss. Based on a careful review of the allegations of the amended complaint, this court's overriding impression is that it sets forth a narrative of the very limited facts which, plaintiff contends, were made known to him during his eight days in solitary confinement, without having been provided even the most basic due process protections required by the Fourteenth and Fourth Amendments. These protections include notice of the charges against him and a prompt hearing at which a neutral magistrate could determine whether probable cause existed to hold him on those charges. It seems clear that, if such due process protections had been provided, then plaintiff would, at a minimum, have been given a clear reason why he was being held, and he could reasonably be expected to have drafted a considerably more detailed complaint than the one presently before this court.

Even considering the limited nature of the allegations in the complaint, this court concludes that, at a minimum, plaintiff's allegations 1) that he was held for eight days without due process protections of any kind, and 2) that the egregious conditions of his confinement were immediately preceded by defendants McClure and Reynolds stating that they intended to have

him jailed based on gun possession charges which they knew to be false serve to create a plausible claim, based on the limited facts available to plaintiff, that his clearly established constitutional rights were violated by defendants in this case. In the court's view, qualified immunity-related discovery exists precisely to allow courts to "fill in the blanks" regarding the details of what exactly transpired in cases such as this one, where the plaintiff plausibly alleges that his constitutional rights were violated by defendants, but where those very same constitutional violations left him with very limited knowledge of important facts.

In finding the sparse nature of the allegations of the amended complaint in this case to not constitute a proper basis for Rule 12 dismissal, this court must emphasize how astonishingly little information plaintiff alleges that he was given about why he was being held at the Sunflower County jail. In this vein, plaintiff alleges in his amended complaint that:

> The charge reads "Hold for Other Agency – Warrant," though Plaintiff's parole officer confirmed repeatedly to Plaintiff's mother that no such hold existed. Plaintiff was restricted to solitary confinement without a parole revocation hearing, presentment, or other hearing of any kind, before he was finally released from custody.

[Amended complaint at 5].

As this court writes these words today, it cannot gain any clear idea exactly why plaintiff found himself held in solitary confinement for eight days with no clear notice of any charges against him and with no hearing of any kind. While the circumstances of the case seem to suggest that gun possession allegations were the underlying reason why plaintiff was held, he alleges that the only information provided to him in this regard was that he was being held based upon an unspecified "hold" by an unspecified "agency." The county jail's notation also made reference to a "warrant" of an unspecified nature, which seems odd, considering that both sides appear to believe that there was no arrest warrant in this case. This court regards the record's uncertainties in this regard as being, in and of themselves, evidence of a due process violation,

since notice of charges against a criminal defendant are not supposed to be a "guessing game." Accepting the allegations of the amended complaint as true, it strikes this court that the vagueness and uncertainty may have been the entire point and that the goal may have been to place plaintiff in a "black hole" of solitary confinement where he was given no clear reasons why he was being held and, thus, no ability to coherently address those reasons and no hearing at which he might have done so.

There is, in this court's view, a Kafkaesque quality to plaintiff's allegations relating to his incarceration, since he alleges that, in spite of his best efforts, he was unable to find out any reason why he was being held or at whose direction. It appears that defendants are essentially seeking to use this fact against plaintiff, by blaming him for not knowing facts which, it appears, were deliberately withheld from him. This court regards defendants' position in this regard as tantamount to a "we taped your mouth shut and you didn't say anything" argument, and, under these circumstances, it has little sympathy for any suggestion that plaintiff's claims should be dismissed based on the spare nature of the allegations in the complaint and before he has been given a chance to use the discovery process to ascertain the exact reasons behind the constitutional violations which, he very plausibly alleges, he suffered in this case.

Given the circumstances of this case, this court struggles to recall a lawsuit in which the need for qualified immunity-related discovery was as glaringly obvious as this one, for reasons which it expounds upon in detail below. Recognizing that *Carswell* requires this court to first deny defendants' Rule 12 qualified immunity motions, this court emphasizes that, in doing so, it places primary emphasis upon the fact that the amended complaint makes a very strong case that plaintiff's eight-day confinement without a hearing or even clear notice of any charges against him violated his rights under clearly established federal law, discussed below. Moreover, while

the amended complaint's allegations are sparse regarding which defendant did exactly what in this case, these are facts which, plaintiff plausibly alleges, they deliberately kept hidden from him. In finding the sparseness of plaintiff's allegations on this issue to be understandable, this court emphasizes once again *Innova Hospital*'s observation that "when discoverable information is in the control and possession of a defendant, it is not necessarily the plaintiff's responsibility to provide that information in her complaint." *Id.* at 730.

In concluding that the amended complaint sufficiently alleges a plausible violation of federal law to survive a Rule 12 motion to dismiss, this court begins with the fact that, accepting the allegations of the complaint as true, it seems clear that plaintiff suffered a severe constitutional injury in this case at the hands of *someone*. Indeed, clearly established federal law makes it clear that, while police may make a warrantless arrest upon probable cause without first going to a neutral magistrate, they cannot thereafter simply place the person in jail indefinitely on their own authority. To the contrary, the Fourth Amendment requires a neutral judicial officer to make a prompt probable-cause determination in such cases, see *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975), and the U.S. Supreme Court has held that a jurisdiction must generally hold such a hearing within forty-eight hours in order to comply with *Gerstein*. *See County of Riverside v. McLaughlin*, 500 U.S. 44, 57 (1991).

Importantly for the purposes of this case, the Supreme Court in *McLaughlin* wrote that:

> This is not to say that the probable cause determination in a particular case passes constitutional muster simply because it is provided within 48 hours. Such a hearing may nonetheless violate *Gerstein* if the arrested individual can prove that his or her probable cause determination was delayed unreasonably. Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, **a delay motivated by ill will against the arrested individual**, or delay for delay's sake.

*McLaughlin*, 500 U.S. at 56 (emphasis added). Thus, while defendants argue, as discussed below, that any ill will on their part towards plaintiff is irrelevant under the objective Fourth Amendment analysis, this is not the case as to plaintiff's *Gerstein* claims.[3]

This court further notes that the county jail's notations in this case appear to offer factual support for plaintiff's claims, since paragraph 20 of the amended complaint alleges that jail records "show he was released January 24 at 10:08 hours by Sean Murphey for the reason of 'other discharge' with an added comment of 'failure initial appearance.'" It thus appears that plaintiff was released – several days later than was constitutionally required - after it was belatedly recognized that a "failure" of his "initial appearance" required such a release. This appears corroborative of plaintiff's allegation that his constitutional rights under *Gerstein* were violated in this case.

While defendants do not appear to dispute that plaintiff suffered a violation of his clearly established constitutional rights in relation to his jailing without a hearing, they suggest that any constitutional violations in this regard were the doings of Sunflower County jail officials and that they had nothing to do with them. Specifically, defendants argue that:

> Plaintiff has not pled any facts showing that Defendants had anything to do with assessing the "charges" appearing on the Release Report of the Sunflower County jail. Plaintiff alleges that he "was booked into Sunflower County jail by Kendria Lanney" and later "released . . . by Sean Murphey for the reason of 'other discharge' with an added comment of 'failure initial appearance.'" *Id.* at 5, ¶ 20. *See* Sunflower County Jail Booking Report (Ex. A) and Release Report (Ex. B).3 He further alleges that the "charges"—which appear on the jail's Release Report as "Hold for Other Agency – Warrant"—were "fabricat[ed]" as "a false charge." ECF #29 at 1, ¶ 1, 5, ¶ 20. But Plaintiff does not allege any facts showing that Defendants, as MSP officials, had anything to do with formulating these charges or preparing the Release Report of the Sunflower County jail.

[3] This court notes that plaintiff's amended complaint does not specifically refer to *Gerstein*, but, by alleging that he was held in jail for eight days with no arrest warrant or post-arrest hearing of any kind, he clearly makes allegations which implicate this decision.

[Brief at 18].

Based upon the allegations of the complaint, this court believes that there is very good reason to doubt defendants' protestations that they had nothing to do with plaintiff's incarceration and the constitutional violations resulting therefrom. In so stating, this court begins with the fact that, as noted previously, plaintiff alleges that his unlawful jailing was immediately preceded by a promise by two of the defendants to have him jailed based on charges they knew to be false. This court believes that it would, under these circumstances, be an extraordinary coincidence if defendants had nothing to do with plaintiff's subsequent incarceration under constitutionally-deficient circumstances. Moreover, the Sunflower County jail's "Hold for Other Agency – Warrant" notation suggests that the county was holding plaintiff based not upon its own evaluation of the necessity for doing so but was instead deferring to the judgment of some "other agency" that he should be jailed.

Under the circumstances of this case, it appears likely that the "other agency" referenced in the jail's notation refers to defendants, as agents for the MSP. After all, prior to his arrest, plaintiff was a free man with no allegations of wrongdoing against him until defendants allegedly stormed into his home without a warrant and expressed an intent to have him jailed based on false gun charges. Moreover, accepting the allegations of the amended complaint as true, defendants had previously been acting in an objectively unreasonable and highly reprehensible manner by searching plaintiff's home without a warrant, ransacking his home, and all but conceding that they were going to attempt to frame him and have him jailed for a crime he did not commit. Considering these facts, this court regards it as plausible that defendants failed to act reasonably in transmitting the information necessary for a timely probable-cause determination or otherwise participated in preventing such a determination.

In this vein, this court notes that, as the arresting officers, defendants had a key role – perhaps *the* key role - to play in the initial appearance/*Gerstein* hearing which allegedly "fail[ed]" and thus deprived plaintiff of his constitutional rights. As noted above, the purpose of a *Gerstein* hearing is to allow a neutral magistrate to ensure that probable cause existed for a warrantless arrest, and it seems clear that, at such a hearing, defendants would have been the key witnesses. After all, who other than defendants could have testified regarding the circumstances surrounding the discovery of the weapon in this case and why it was believed that it belonged to plaintiff? This court further submits that, accepting the allegations of the amended complaint as true, there is reasonable cause to suspect that defendants would have been reluctant to have their actions before and during plaintiff's arrest scrutinized by a neutral magistrate. At any such hearing, defendants would, presumably, have had to answer uncomfortable questions, such as why plaintiff was arrested for possession of a gun which belonged to someone else and which was being stored in a home rented to his mother.

This is assuming, of course, that an unlawful possession of a firearm charge was, in fact, the underlying reason why plaintiff was held in jail, but, to reiterate, he alleges that he was given no clear information regarding any formal charges against him or exactly why he was being held. Throughout this order, this court will make reference to potential gun possession charges, but each reference should be understood as being subject to the caveat that plaintiff alleges that he was not told exactly why he was being held in jail and, that being the case, is unable to provide specific allegations in this regard. Without question, the exact nature of the charges which led to plaintiff's confinement is an issue in urgent need of clarification in discovery, and it is difficult for this court to analyze the legal issues in this context without first obtaining this information. Given the information allegedly given (or, more precisely, not given) to plaintiff in this regard, it

is difficult for this court to understand how it could, consistent with the interests of justice, simply dismiss plaintiff's claims without first giving him an opportunity to use the discovery process to find out exactly why and by whom his constitutional rights were, allegedly, so egregiously violated in this case.

As noted previously, plaintiff alleges that he made repeated inquiries with his parole officer regarding why he was being held, who was unable to provide him with any information in this regard. [Amended complaint at 5]. It strikes this court that there are only so many entities or individuals who could have been involved in the violation of plaintiff's constitutional rights, and a simple process of elimination seems to point strongly towards defendants. Moreover, Sunflower County jail officials had, as far as this court is aware, no bone to pick with plaintiff, while the amended complaint alleges that defendants had demonstrated a keen interest in seeing that he was incarcerated. As discussed in greater detail below, this court concludes that, while such evidence of subjective malice is not independently actionable under the objective Fourth Amendment standard, it may still be of relevance for certain purposes, including evaluating the plausibility of plaintiff's remaining allegations.

Under these circumstances, this court believes that the amended complaint plausibly alleges that defendants, and not Sunflower County jail officials, were responsible for the constitutional injury which plaintiff suffered and that qualified immunity should be denied at the Rule 12 stage. The only way this court could reach a different result would be if it were to fault plaintiff for failing to allege facts in his complaint which were unknowable to him. However, if this court were to dismiss apparently strong constitutional claims based upon plaintiff's failure to allege facts which, he contends, were deliberately hidden from him, then it would be making itself a party to the injustice which, he alleges, he experienced in this case. This court will not do

that, and Fifth Circuit law – even post-*Carswell* - does not require it to do that. In so stating, this court reiterates that *Innova Hospital* remains good law even after *Carswell*, and, that being the case, it remains improper to fault plaintiff for failing to allege facts in his complaint which were in possession of defendants and unknowable to him.

That brings this court to the fact that, in declining to address plaintiff's allegations regarding their misconduct during the search of his home, defendants cite the fact that the Fourth Amendment and qualified immunity "reasonableness" standards are both objective ones, as to which questions of malice or personal animus play no role. *Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir. 2000). The question of the admissibility and relevance of plaintiff's allegations of defendants' pre-arrest misconduct will likely continue to be a significant issue throughout this litigation, and this court will accordingly address it at some length. In doing so, this court acknowledges at the outset that defendants' alleged subjective hostility towards plaintiff does not itself establish a Fourth Amendment violation. *See, e.g., Whren v. United States*, 517 U.S. 806, 813 (1996). This does not mean, however, that this court must disregard any and all evidence which in any way supports a finding that defendants may have acted with malice towards plaintiff, for any and all purposes.

At the Rule 12 stage, the court must consider the well-pleaded factual allegations of the complaint as a whole, drawing reasonable inferences in plaintiff's favor. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017). Indeed, the Supreme Court has emphasized that determining plausibility is necessarily "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. That context is significant here. Plaintiff does not merely allege, in

conclusory fashion, that defendants caused him to be wrongfully detained. He alleges a course of specific misconduct immediately preceding his detention.

Among other things, plaintiff alleges that defendants entered his home without a warrant, unnecessarily broke down his door and ransacked his residence, verbally harangued him, and, perhaps most significantly, threatened to attribute ownership of a firearm to him even though they knew that firearm did not belong to him. Accepting those allegations as true, as the court must at this stage, they provide some factual basis for inferring that defendants' treatment of plaintiff did not necessarily end once he was taken into custody. Stated differently, in assessing plausibility, the court is not required to consider plaintiff's ensuing eight-day detention as though it arose in a vacuum, divorced from defendants' alleged conduct immediately preceding it.

The alleged history of “bad blood” likewise provides context for plaintiff’s otherwise unusual allegation that defendants knowingly threatened to attribute the firearm to him so that he would receive “automatic jail time.” Without that context, the court might reasonably question why defendants would seek to frame the son of a fellow MSP employee. The allegations of prior conflict supply a plausible answer. And defendants’ alleged threat to have plaintiff jailed on a knowingly false premise supplies a direct factual link between their preceding conduct and plaintiff’s ensuing detention under circumstances in which neither the charge against him nor the agency responsible for holding him was disclosed.

Accordingly, although defendants’ alleged hostility toward plaintiff does not itself establish a Fourth Amendment violation, the court may consider the complaint’s factual allegations as a whole in determining whether plaintiff has plausibly alleged independently actionable misconduct. Considered together—and drawing reasonable inferences in plaintiff’s favor—the alleged prior conflict, defendants’ conduct during the search, their express threat to

procure plaintiff's incarceration through a knowingly false attribution of the firearm, and plaintiff's immediate detention on an unexplained hold support a plausible inference that defendants participated in causing his allegedly unlawful arrest and detention. Defendants' motion largely considers the detention in isolation and therefore does not adequately account for the full factual context alleged in the amended complaint.

Aside from their relevance in assessing the generalized plausibility of plaintiff's other allegations of misconduct, this court believes that his allegations of wrongdoing might arguably (and depending upon the specific nature of the evidence) serve as circumstantial evidence of defendants' "knowledge." In so stating, this court notes that the Supreme Court has taken pains to distinguish a defendant's subjective motivation from "the facts that he knows," making it clear that the latter may, in fact, be relevant under the Fourth Amendment analysis. *Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S. Ct. 588, 59 (2004). In the court's experience, the factual distinction between what a defendant "knows" and his subjective state of mind is often a difficult one, but it seems clear that, by permitting evidence of knowledge, the Supreme Court and the Fifth Circuit have permitted evidence which many would regard as subjective in nature. In *Winfrey v. Rogers*, 901 F.3d 483 (5th Cir. 2018), for example, the Fifth Circuit wrote that:

> Since *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), it has been clearly established that a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes "a false statement *knowingly and intentionally*, or with reckless disregard for the truth" and (2) "the allegedly false statement is necessary to the finding of probable cause." *Id.* at 155–56, 98 S.Ct. 2674. In *Franks*, the Supreme Court observed that the warrant requirement is meant "to allow the magistrate to make an independent evaluation of the matter." *Id.* at 165, 98 S.Ct. 2674.

*Winfrey*, 901 F.3d at 494–95 (emphasis added).

Similarly, the Fifth Circuit in *Hale v. Fish*, 899 F.2d 390 (5th Cir. 1990) concluded that an affidavit supporting an aggravated kidnapping arrest warrant contained misstatements and

critical omissions sufficient to amount to constitutional violation and to support damages verdicts against two FBI agents (Jones and Magee) who were responsible for the affidavit. In explaining why neither of these two agents were entitled to qualified immunity, the Fifth Circuit wrote that:

> In the present case, Major Jones submitted an affidavit found by the district court to contain material misstatements and omissions of such character that no reasonable official would have submitted it to a magistrate. As this finding is supported by the record, the court did not err in denying qualified immunity to Major Jones. Special Agent Magee contends that the district court erred in denying him qualified immunity under either an active participant theory or a conspirator theory. * * * What Special Agent Magee fails to consider is the evidence demonstrating his knowledge of exculpatory information; although his is a closer case than with Major Jones, it is likely that a reasonable officer having the information possessed by Special Agent Magee during the events at issue would have known that his conduct in assisting Major Jones in the plaintiffs' arrest would have been a violation of the Fourth Amendment. Consequently, the district court did not err in denying qualified immunity to Special Agent Magee.

*Hale v. Fish*, 899 F.2d at 402 (emphasis added).

While this Fifth Circuit precedent arose in a slightly different Fourth Amendment context (namely *Franks* claims based on false allegations in arrest warrants), the fact that courts have been willing to consider whether a defendant acted "knowingly and intentionally" in the Fourth Amendment context makes clear that, by permitting evidence of "knowledge," the Supreme Court has opened the door somewhat to evidence which many would regard as subjective in nature. This court further reiterates that, in *McLaughlin*, the Supreme Court wrote that wrote that, in the context of *Gerstein* claims, "[e]xamples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, **a delay motivated by ill will against the arrested individual**, or delay for delay's sake." *McLaughlin*, 500 U.S. at 56 (emphasis added). It thus seems clear that the principle that the Fourth Amendment standard is purely objective is a nuanced one which does not support a blanket rejection of any and all proof which might in any way touch upon a defendant's subjective intent.

This court now turns to the second claim which, it believes, plausibly alleges a violation of clearly established federal law: plaintiff's false arrest claim. As to this claim, defendants' primary argument is that plaintiff has failed to specifically allege facts which support a conclusion that they did, in fact, arrest him based on information they knew to be false. Specifically, defendants argue that:

> Plaintiff acknowledges that a firearm was indeed found in his residence. *Id.* at 5, ¶ 17. He does not allege that Defendants fabricated or falsified its discovery. Plaintiff accuses Defendants of "knowing the firearm did not belong to [him]." *Id.* at 5, ¶ 17. But he has not pled any facts demonstrating the veracity of that allegation. Nor has he pled any facts relative to *where* in his residence the fanny pack and firearm were located, *where* the firearm was located in physical proximity to him at the time of his arrest, or *who* had control of the firearm at the time of his arrest.

[Brief at 6].

In addressing defendants' argument, this court notes at the outset that their brief appears to assume that having conducted a warrantless arrest of plaintiff without probable cause is the only allegation *vis a vis* his arrest for which they might be held liable in this case. This court does not believe that this is necessarily the case. In so stating, this court notes that both sides appear to assume (notwithstanding the "warrant" reference in jail records) that plaintiff was arrested without a warrant. Assuming that is the case, then the 48-hour "clock" on a *Gerstein* hearing was ticking, and defendants had a duty to act reasonably to do their part, as the individuals with knowledge of what plaintiff had supposedly done wrong, to ensure that this hearing took place and that the constitutional requirements for it were met. While this court has discussed these allegations in the context of plaintiff's wrongful detention claim, it seems entirely plausible that the manner in which the arrest was conducted contributed to the "failure" of plaintiff's initial appearance/*Gerstein* hearing, such as defendants' failure to note in arrest

records exactly what plaintiff was being arrested for or based on any unreasonable conduct on their part in transferring custody of him to the Sunflower County jail.

This court will not speculate regarding exactly what defendants might have done *vis a vis* plaintiff's arrest and his subsequent transfer to the Sunflower County jail, and it believes that this is a matter in urgent need of discovery, including through depositions of the relevant jail officials. To be sure, *Carswell* requires this plaintiff to survive a Rule 12 motion to dismiss without discovery, but this court reiterates that *Innova Hospital* makes clear that plaintiff cannot be expected to allege facts in his complaint which are in the possession of defendants. This court believes that this principle applies in greater force in cases, such as this one, where the amended complaint supports a conclusion that the defendants *deliberately hid* the relevant facts from him.

Turning now to plaintiff's claim that he was arrested without probable cause, this court notes that defendants interpret the amended complaint as alleging that he was wrongly arrested on weapons possession charges. However, this court reiterates that while the amended complaint alleges that defendants expressed an intent to have plaintiff arrested and jailed on false gun possession charges they knew to be false and that he was arrested and unlawfully jailed shortly thereafter, plaintiff alleges that the only indication of why he was being held in the Sunflower County jail was the vague notation "Hold for Other Agency – Warrant." [Amended complaint at 5]. This court reiterates that this is a charge which is so vague as to be essentially meaningless, particularly since plaintiff alleges that his parole officer denied knowledge of any hold against him. Whatever these words mean, they clearly do not plainly allege that plaintiff was being held based on charges of unlawful possession of a firearm, and, that being the case, defendants' arguments in their motion to dismiss appear to be predicated on a logical inference which may or may not prove to be true.

Assuming that defendants' inference is correct and that plaintiff was, in fact, arrested on gun possession charges, this court believes that defendants falsely characterize the nature of the amended complaint's allegations in this regard. In particular, this court notes that defendants argue that plaintiff "has not pled any facts demonstrating the veracity of th[e] allegation" that they did not "know[] the firearm did not belong to [him]," but this is simply incorrect. In so stating, this court reiterates that, in the Rule 12 context, it is required to view the facts alleged in the complaint in the light most favorable to plaintiff, as the non-moving party. In this vein, this court notes once again that paragraph 17 of the amended complaint plainly states in part that "[d]uring the search, Defendants McClure and Reynolds located a fanny pack containing a firearm, a driver's license, and a birth certificate belonging to Plaintiff's family member." [Amended complaint at 5].

Accepting these alleged facts as true, this court believes that they would strongly suggest to any reasonable officer that the gun belonged to plaintiff's family member and not him. Plaintiff does not rely solely upon such a factual inference, however. To the contrary, the amended complaint alleges that "[d]espite knowing the firearm did not belong to Plaintiff, Defendants stated that they were going to attribute ownership of the firearm to Plaintiff because, as a parolee, that would constitute 'automatic jail time.'"[4] *Id.* Plaintiff thus alleges that defendants made it clear that, while they knew the gun was not his, they were going to say that it was in order to ensure that he received jail time. Under these circumstances, defendants' suggestion that the amended complaint offers no allegations to support plaintiff's contention that they knew that the gun did not belong to him is simply incorrect.

---

[4] It seems clear that this alleged statement constitutes a non-hearsay admission by a party opponent. *See* FRE 801(d)(2).

Equally unpersuasive is defendants' suggestion that they should be dismissed at this juncture because plaintiff has not "pled any facts relative to *where* in his residence the fanny pack and firearm were located, *where* the firearm was located in physical proximity to him at the time of his arrest, or *who* had control of the firearm at the time of his arrest." *Id.* Citing this alleged failure, defendants argue that "a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed [his] actions were proper." *Necaise v. City of Waveland, Miss.*, Civil Action No. 1:24-cv-00286-TBM-RPM, 2025 WL 2647278, at *5 (S.D. Miss. Aug. 13, 2025) (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). [Brief at 15].

In addressing defendants' arguments, this court must distinguish between the issue of whether they will eventually be able to prevail at trial based upon their arguments quoted above and whether they are entitled to dismissal on this basis now. Nothing in this court's order today irrevocably decides this issue against defendants, but it believes that they are in a poor position to seek dismissal on this issue now, at the Rule 12 dismissal stage. In so concluding, this court notes at the outset that, according to plaintiff, defendants did not say that they knew the gun in question didn't belong to him but were going to charge him based on a constructive possession theory or based on his proximity to the gun. Rather, plaintiff quotes defendants as saying that they were going to falsely say that the gun *did* belong to him and have him jailed on that basis, which raises serious questions regarding whether defendants "knew" (again, a permissible consideration in the Fourth Amendment context) that they had no legal basis to charge him but were going to do so anyway to ensure that he received jail time.

This court believes that the circumstances of this case provide a particularly poor context for defendants to seek dismissal based on plaintiff's failure to anticipate and pre-emptively rebut

a constructive possession defense which, according to the amended complaint, defendants gave no indication even factored into his arrest. In so stating, this court reiterates that the factual record regarding what facts were known to defendants at the time of the arrest, or even what the basis for his detention was, is exceedingly unclear, due to defendants' own alleged actions. In most cases of this nature, this court would have an officer's affidavit in support of an arrest warrant or at a *Gerstein* hearing to consider, and plaintiff would have similarly been able to use such evidence in drafting his complaint. No such evidence exists in this case, since, according to plaintiff, no due process hearing was held, either before or after his arrest.

This court further notes that, in the *Brown v. Callahan* decision relied upon by defendants, the Fifth Circuit specifically wrote that:

> There is also insufficient evidence from which a reasonable jury could infer that Callahan's conduct did not deserve qualified immunity. The district court relied on the same evidence related above that shows, at worst, the Sheriff's negligent supervision of Dr. Bolin and the doctor's relationship with the nursing staff. In the absence of any prior incidents that connoted inadequate medical care at the jail, it is impossible to infer that the Sheriff was essentially callous about inmate medical care or had any reason to suspect the level of care had become or could become constitutionally inadequate. The Sheriff was neither plainly incompetent nor knowingly violating the law, nor were his actions, in the circumstances he faced, objectively unreasonable.

*Brown*, 623 F.3d at 257. It thus seems clear that, in deciding that it should grant the defendant in that case qualified immunity, the Fifth Circuit in *Brown* placed considerable weight upon the fact that it had before it a defendant who had not knowingly violated the law. In this case, this court believes that plaintiff's allegation that defendants specifically stated that they knew the weapon in question did not belong to plaintiff but that they were going to say it did anyway supports a conclusion that they *did* knowingly violate the law in this case.

This court further notes that *Brown* appears to be based upon the U.S. Supreme Court's holding in *Anderson v. Creighton*, in which the Court, in a 6-3 decision, wrote that:

> The relevant question in this case … is the objective (albeit fact-specific) question whether a reasonable officer could have believed Anderson's warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed. Anderson's subjective beliefs about the search are irrelevant.

483 U.S. 635, 641, 107 S. Ct. 3034, 3040 (1987). In describing the facts in *Anderson*, the Supreme Court wrote that:

> Petitioner Russell Anderson is an agent of the Federal Bureau of Investigation. On November 11, 1983, Anderson and other state and federal law enforcement officers conducted a warrantless search of the home of respondents, the Creighton family. The search was conducted because Anderson believed that Vadaain Dixon, a man suspected of a bank robbery committed earlier that day, might be found there. He was not.

*Anderson*, 483 U.S. at 637.

It thus seems clear that, like *Brown, Anderson* involved a defendant who was, more or less, trying to do his job in good faith, although it appears that each defendant may have made errors in doing so. While this court recognizes that the Supreme Court in *Anderson* wrote that the officer's subjective intent was irrelevant, it must still wonder: would the Court have reached the same result if confronted with an FBI agent who 1) was acting not to solve a crime, but to further a personal vendetta against the individual whose home he searched and 2) expressly stated that he was going to use information he knew to be false in support of the plaintiff's arrest, in order to ensure that he received jail time? Under these circumstances, this court has very serious doubts that the Supreme Court in *Anderson* would have reached the same result, and it therefore regards it as distinguishable from this case.

In so stating, this court notes that the second allegation in particular - that defendants intended to use information known to be false to manufacture probable cause - is not simply a question of the defendant's subjective state of mind. To the contrary, it constitutes an allegation of egregious misconduct by the defendant which taints the judicial process and which is virtually indistinguishable from the behavior which the Supreme Court found to constitute an independent

Fourth Amendment violation in *Franks*. It thus seems highly doubtful to this court that the Supreme Court would have engaged in the same analysis in *Anderson* if it had been confronted with the facts here, but, even assuming for the sake of argument that it would have, this court still concludes, for the reasons stated above, that this precedent does not constitute a basis for dismissing this particular case at the Rule 12 stage.

To reiterate, this court believes that any scarcity of the allegations in the amended complaint regarding *Anderson*-type issues is largely attributable to 1) defendants' own actions in failing to create a record by going through the constitutionally-required probable cause proceedings before a neutral magistrate, and 2) their own alleged statement to plaintiff that they were going to have him arrested based on information they knew to be false, rather than any constructive possession theory. Under these circumstances, this court does not agree with defendants that any failure on the part of plaintiff to anticipate and pre-emptively rebut a constructive possession theory in his amended complaint constitutes a proper basis for dismissing this case at the Rule 12(b)(6) stage.

Having said that, this court's ruling today will not prevent defendants from attempting to gather facts in discovery in support of the defense they apparently seek to offer, namely that the location of the weapon in the house would have led reasonable officers to arrest plaintiff in spite of their knowledge that the weapon did not belong to him. [Brief at 6]. This strikes this court as being a fact-intensive argument best made following discovery, but, that aside, it notes for the record that there appear to be a number of logical obstacles to such an argument. In so stating, this court notes that, in its experience, arguments that a weapon was in close proximity to a suspect is most commonly offered as a basis for securing the weapon or handcuffing a suspect

during a search, to make certain that it is not used to harm officers. Such precautions strike this court as being entirely appropriate, but that is not the scenario involved here.

This case involves an alleged decision to arrest plaintiff as a felon in possession based on the presence of a weapon in a home which was, by this court's understanding, rented to his *mother*, who was an employee at MSP. In so stating, this court presumes that MSP is not in the business of allowing individuals "off the street" to live on its property and that plaintiff's right to do so was based solely on his status as the son of a prison employee who had been rented a residence there. Needless to say, plaintiff's mother enjoys her own Second Amendment rights to keep a weapon to protect her home, just as she had every right to permit her relative to store her weapon in her home. It seems self-evident that such personal protection concerns are particularly urgent for individuals living on the grounds of a prison.

Plaintiff's mother likewise had a right to allow her son to live in her home with her, if she wished to do so, and this court accordingly believes that reasonable officers in defendants' position should have been very reluctant to arrest plaintiff as a felon in possession based on the presence of a weapon in a home rented to his mother. Moreover, if the alleged concern was that plaintiff would take the weapon and use it in a robbery, murder or some other crime, then it does not appear to make a great deal of difference, as far as this court can tell, whether the gun was located in the living room, kitchen, or plaintiff's bedroom. In any event, plaintiff would have been able to gain easy access to the weapon since he, presumably, had the full run of the house. And yet, a holding that plaintiff's mother was not allowed to store her relative's weapon in her home would appear to be an untenable one. That being the case, this court does not regard this line of argument as being a particularly strong one, although it will not prevent defendants from pursuing this issue in discovery and, if necessary, at trial. This court does not believe, however,

that plaintiff's failure to anticipate and pre-emptively rebut this defense in his complaint serves as a valid basis for granting a Rule 12 motion to dismiss.

This court further concludes that the "clearly established" prong of the qualified immunity standard does not save defendants, as to plaintiff's false arrest claim. In concluding that it was "clearly established" that defendants could not knowingly arrest plaintiff based on information they knew to be false, this court notes that 1) it was clearly established that plaintiff could not be arrested without probable cause, *see Beck v. Ohio*, 379 U.S. 89 (1964) and 2) as, discussed above, *Devenpeck* makes it clear that the facts which a defendant "knows" are properly included in the Fourth Amendment analysis. Given these facts, this court believes that, as surely as one plus one equals two, it necessarily follows that it was clearly established that a defendant may not constitutionally arrest a suspect based on information which he knows to be false. While this court regards this fact as being a rather obvious one, it notes that other U.S. Supreme Court precedent offers additional support for it.

In *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 368, 137 S. Ct. 911, 919 (2017), for example, the Supreme Court concluded that a warrantless arrest violated the Fourth Amendment in a case involving officers who allegedly knew that the evidence they were relying upon did not support the criminal accusation. In *Manuel*, the officers in question gained knowledge of the plaintiff's innocence by conducting a field test of pills which proved negative for the presence of an illegal substance. *Manuel*, 580 U.S. at 367-68. In concluding that the plaintiff had established a Fourth Amendment claim based both upon his arrest without a warrant and subsequent detention, the U.S. Supreme Court wrote that:

> For that reason, and contrary to the Seventh Circuit's view, Manuel stated a Fourth Amendment claim when he sought relief not merely for his (pre-legal-process) arrest, but also for his (post-legal-process) pretrial detention. Consider again the facts alleged in this case. Police officers initially arrested Manuel without probable cause, based solely on his

> possession of pills that had field tested negative for an illegal substance. So (putting timeliness issues aside) Manuel could bring a claim for wrongful arrest under the Fourth Amendment. And the same is true (again, disregarding timeliness) as to a claim for wrongful detention—because Manuel's subsequent weeks in custody were *also* unsupported by probable cause, and so *also* constitutionally unreasonable.

*Manuel*, 580 U.S. at 368-69.

*Manuel* strikes this court as being quite helpful authority for plaintiff in this case, since he is alleging essentially the same thing as the plaintiff in that case – namely that he was arrested and jailed on the basis of information which defendants knew to be false. The fact that the defendants in *Manuel* allegedly gained knowledge of falsity through field tests of drugs as opposed to the presence of documents identifying the gun in this case as belonging to plaintiff's relative does not make any difference, in this court's view. Moreover, plaintiff's specific allegation in this case that defendants expressly *told* him that they planned to have him arrested and jailed based on information they knew to be false strengthens his allegations in this regard even further.

As an alternative basis for deciding that the "clearly established" prong is met, this court submits that it should be obvious that an officer may not seek to deliberately frame a defendant based on information he knows to be false. This court hopes and expects that this is a non-controversial proposition, which it regards as sufficiently obvious as to implicate the "obvious case" exception set forth in the U.S. Supreme Court's decision in *Hope v. Pelzer*, 536 U.S. 730 (2002) and, thus, meet the "clearly established" prong on that basis alone. In so stating, this court would submit that outright *lying* in solemn proceedings, as to which a suspect's personal freedom is at stake, is something which no officer could believe he had a right to do and that no federal appellate decision is needed to make this clear.

In his brief, plaintiff relies upon the Supreme Court's decision in *Franks*, which, as discussed above, provides that a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes "a false statement knowingly and intentionally, or with reckless disregard for the truth" and (2) "the allegedly false statement is necessary to the finding of probable cause." *Id.* at 155–56, 98 S.Ct. 2674. As discussed above, this court believes that the "clearly established" prong is met with regard to plaintiff's false arrest claim based upon *Manuel, Devenpeck* and, if necessary, *Hope*, and it is unnecessary to decide whether *Franks* could likewise permit plaintiff to meet this prong. Still, even assuming *arguendo* that *Franks* is not sufficiently on point to meet the "clearly established" prong, this court would still conclude that it offers strong tacit support for the notion that what is alleged to have occurred in this case was constitutionally impermissible.

Apparently recognizing that *Franks* constitutes harmful precedent for them, defendants argue that, since no arrest warrant was sought or obtained in this case, that decision is inapplicable here.[5] It strikes this court that, by seeking to distinguish *Franks* based upon their failure to obtain an arrest warrant, defendants are essentially asking to be rewarded for keeping things "off the books" and for doing things the wrong way. In so stating, this court emphasizes that arrest warrants largely exist in order to protect the rights of the criminal defendant, although they also offer some protection for officers who, when faced with a close decision whether or not to arrest someone, can present the *true* facts to a neutral magistrate and allow him or her to make the call. As quoted above, defendants argue that they had a difficult call to make when they

---

[5] This court reiterates that the Sunflower County jail's records make reference to a "warrant," and it therefore seems possible that discovery will reveal that there was, in fact, an arrest warrant in this case. This court will assume for the time being that this is not the case, however, since both sides appear to do so in their briefing.

found the gun in plaintiff's residence on prison grounds, but arrest warrants largely exist in order to allow trained magistrates to determine whether probable cause exists in close and difficult cases. As far as this court can tell, there was no urgent situation in this case which would have prevented defendants from seeking an arrest warrant from a neutral magistrate, perhaps after securing the weapon pending a ruling in this regard.

Accepting the allegations of the amended complaint as accurate, it appears that, in this case, defendants took it upon themselves to simply decide for themselves (with apparent glee) that they had found a basis to have plaintiff jailed and to deliver him to the Sunflower County jail for that purpose, where he was booked upon a vague charge which did not even inform him what, if anything, he was being charged with. Now, confronted with precedent such as *Franks* which bars them from obtaining warrants based on information they know to be false, defendants seek for this court to find that so long as they arrested plaintiff themselves based on information they knew to be false, instead of involving a neutral magistrate in these matters, then what they did was perfectly acceptable under the Fourth Amendment. *Manuel* makes it clear that this is an untenable position, but this court believes that *Franks* offers additional strong, albeit indirect, confirmation in this regard.

The Fifth Circuit has repeatedly made it clear, consistent with *Franks,* that an officer's decision to have a suspect arrested based on information he knows to be false, or the falsity of which he recklessly disregards, constitutes an act which, in and of itself, taints the judicial process and violates the Fourth Amendment. Aside from the *Winfrey* and *Hale* decisions discussed above, another in the line of Fifth Circuit case law on this issue is *Hart v. O'Brien*, where that Court noted that:

> The Supreme Court in *Franks v. Delaware* established that a search violates the Fourth Amendment if it was conducted pursuant to a warrant issued by a magistrate who was

> misled by information in an affidavit, provided that the affiant knew the information was false or would have known it was false except for his reckless disregard for the truth.

*Hart v. O'Brien*, 127 F.3d 424, 448 (5th Cir. 1997) (overruled on other grounds by *Kalina v. Fletcher*, 522 U.S. 118, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997)). Significantly, the Fifth Circuit in *Hart* made it clear that individuals other than the actual affiant may be held liable in this context, writing that:

> We agree with the reasoning of these circuit courts that a deliberate or reckless misstatement may form the basis for a *Franks* claim against a government official who is not the affiant. "The Fourth Amendment places restrictions and qualifications on the actions of the government generally, not merely on affiants." A governmental official violates the Fourth Amendment when he deliberately or recklessly provides false, material information for use in an affidavit in support of a search warrant, regardless of whether he signs the affidavit.

*Hart*, 127 F.3d at 448–49(citation omitted).

This court believes that, by extending *Franks* claims to individuals who did not actually seek a warrant, the Fifth Circuit has rejected the hair-splitting interpretation of *Franks* which defendants offer in this case. The Fifth Circuit has instead, quite properly, looked to the simple question of whether the defendants were alleged to have had a suspect arrested based upon information they knew to be false. Defendants do not appear to dispute that, if they had sought an arrest warrant, *Franks* would have clearly prohibited them from doing so on the basis of knowingly providing false information. Instead, defendants' *de facto* argument appears to be "but see, we didn't obtain an arrest warrant or even a post-arrest finding of probable cause at all - we bypassed a neutral magistrate altogether and acted on our own, so you should send us on our way!" This is not a persuasive argument to this court, for reasons which should be obvious. In so stating, this court notes that a ruling accepting such an argument would provide an additional entry in the "playbook" for how officers might violate citizens' constitutional rights and get away with it: namely, by simply keeping things "off the books" and not involving a neutral

magistrate at all. This court can discern no reason why federal courts should allow such perverse incentives to exist in the law, and it accordingly concludes that, even if *Franks* is not sufficiently on point to meet the "clearly established" prong, it still provides strong tacit confirmation that defendants' alleged actions in this case violated the Fourth Amendment.

Having concluded, based solely upon the amended complaint, that plaintiff has alleged facts which, if true, would overcome defendants' qualified-immunity defense, the court further concludes that limited discovery is appropriate under *Lion Boulos v. Wilson*, 834 F.2d 504, 507–08 (5th Cir. 1987), and *Backe v. LeBlanc*, 691 F.3d 645, 648–49 (5th Cir. 2012). Significant factual questions material to qualified immunity remain unresolved, including: (1) the grounds upon which plaintiff was arrested and detained; (2) the information known to each defendant when plaintiff was arrested and delivered to the Sunflower County jail; (3) the statements or representations each defendant made to jail officials or other governmental actors concerning plaintiff; (4) the identity of the "other agency" for which the jail purportedly held plaintiff; and (5) each defendant's involvement, if any, in plaintiff's continued detention without a timely probable-cause determination.

Those facts bear directly upon whether each defendant violated plaintiff's clearly established rights and whether each defendant's conduct was objectively reasonable. Discovery shall therefore be limited to these and any closely related facts necessary to resolve defendants' qualified-immunity defenses. General merits discovery shall not proceed unless and until the court finally resolves qualified immunity. See *Asante-Chioke v. Dowdle*, 103 F.4th 1126, 1131–32 (5th Cir. 2024). The magistrate judge shall establish an expedited discovery schedule

consistent with these limitations. Upon completion of that discovery, defendants may renew their qualified-immunity arguments by motion for summary judgment.[6]

**State Law Claims**

This court now turns to defendants' motion to dismiss the state law claims asserted against them. As to these claims, this court notes that it previously granted the State of Mississippi's motion to dismiss on the basis of Eleventh Amendment immunity, and this significantly reduces the state law claims which might potentially be asserted against the remaining individual defendants. In so stating, this court notes that the Mississippi Tort Claims Act (MTCA) provides in pertinent part that:

> (1) The remedy provided by this chapter against a governmental entity or its employee is exclusive of any other civil action or civil proceeding by reason of the same subject matter against the governmental entity or its employee or the estate of the employee for the act or omission which gave rise to the claim or suit; and any claim made or suit filed against a governmental entity or its employee to recover damages for any injury for which immunity has been waived under this chapter shall be brought only under the provisions of this chapter, notwithstanding the provisions of any other law to the contrary.
> (2) An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee shall be held personally liable for

---

[6] This court notes that defendant Sequcia Wren has filed a separate motion to dismiss [33-1], in which she joins the arguments raised by defendants Reynolds and McClure. As to her motion, plaintiff responds that

> Plaintiff pleads Wren's personal involvement directing the forced entry and supervising the search of his residence. It was she who oversaw the deployment of the K-9 unit during the raid and specifically instructed Defendant Marquis Hall and another correctional officer to forcibly break down the front door, whereafter Defendants forced their way inside and, under Defendant Wren's supervision, conducted a canine-assisted search of the subject property, proceeding to toss and ransack the premises. ECF # 29 at ¶ 14. These particularized allegations state a claim against Defendant Wren individually and defeat dismissal.

[Brief at 7]. This court agrees, and it concludes that any arguments by one or mor defendants that the facts do not support a finding of liability on their part should be raised in the context of a summary judgment motion following discovery.

> acts or omissions occurring within the course and scope of the employee's duties. **For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense.**

Miss. Code Ann. § 11-46-7(1) and (2). See also Miss. Code Ann. § 11–46–5(2).

Thus, the MTCA bars any state law claims against defendants in this case *except* to the extent that the employee's alleged conduct constituted "fraud, malice, libel, slander, defamation or any criminal offense." *Id.* This court agrees with defendants that this provision serves to bar plaintiff's claims for 1) negligent infliction of emotional distress and 2) false imprisonment since the amended complaint does not allege that defendants committed any of the requisite forms of misconduct, quoted above, so as to allow them to recover against them for these torts. Defendants correctly note that plaintiff has failed to argue otherwise in his responsive brief. Plaintiff correctly argues that his claim for intentional infliction of emotional distress (IIED) is not barred by the MTCA since he alleges malicious misconduct in this regard and, additionally, his IIED claim was filed within the applicable three-year statute of limitations. Defendants originally argued that this claim was subject to a one-year statute of limitations, but, in their reply brief, they concede that recent Mississippi Supreme Court precedent defeats their arguments in this regard. Reply brief at 10, citing *GEICO Cas. Co. v. Stapleton*, 315 So. 3d 464, 468 (Miss. 2021) (overruling previous cases which held that claim of intentional infliction of emotional distress is subject to one-year statute of limitations). This court will therefore grant defendants' motion to dismiss the false imprisonment and negligent infliction of emotional distress claims against them, but plaintiff's IIED claim against them will be allowed to proceed to discovery.

**Conclusion**

Having discussed the legal issues in this case, this court would make some final observations regarding the issues which defendants chose to raise in their motion to dismiss. The vast majority of defendants' briefing involves arguments which either 1) point out the sparseness of certain allegations in the amended complaint, in a case where, plaintiff alleges, crucial facts were deliberately kept hidden from him or 2) engage in reverse Monday-morning quarterbacking regarding what a reasonable defendant *could have believed* regarding a constructive possession defense, even though, according to plaintiff, defendants expressed an intent to frame him on the issue of whether he owned the gun himself.

There is a basis (albeit a potentially distinguishable one) in the law for defendants to pursue each of these lines of argument, and this court does not rule out the possibility that one or even both of them will eventually prove to have some merit. However, defendants have very little to offer this court regarding the issue which concerns it the most: namely, whether it has before it defendants who intentionally and egregiously violated the constitutional rights of the plaintiff in this case.[7] It seems entirely possible that plaintiff's allegations in this regard will collapse in discovery, but, for now, it appears that they may have considerable merit. Moreover, given the alleged circumstances of plaintiff's arrest and confinement, this court believes that simply dismissing his claims before he has been given a chance to avail himself of the discovery process would be a gross injustice which would be contrary to Fifth Circuit precedent such as

[7] In so stating, this court notes that defendants decline to address plaintiff's extensive allegations of misconduct on their part preceding his arrest, based on the notion that, since the Fourth Amendment standard is an objective one, these allegations are of no relevance whatsoever in this case. This court has previously discussed why it regards this notion as being a false one.

*Innova Hospital*. Thus, except for the aforementioned state law claims which are barred by the MTCA, defendants' motion to dismiss will be denied.

It is therefore ordered that defendants' motions to dismiss [30-1, 33-1] are granted in part and denied in part, as more specifically set forth above. This court notes that, in light of the fact that Fifth Circuit precedent such as *Asante-Chioke* requires it to limit any discovery to qualified immunity-related issues, it is apparent that any ultimate trial in this case is not even close to taking place.[8] That being the case, this court will wait until a time when the likely end of such pre-trial proceedings is foreseeable before it sets a final trial date in these matters.

This, the 22nd day of September, 2026.

/s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI

[8] In so stating, this court notes that, even assuming that no interlocutory appeal is made in this case, *Asante-Chioke* requires this court to conduct qualified immunity-related discovery and consider an additional round of qualified immunity-based summary judgment motions before it can even begin discovery on remaining issues such as damages.